UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| LYNNE ANN BRUNKOW, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 15-cv-1342 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## OPINION & ORDER

This social security disability benefits appeal is before the Court on the Motion for Summary Judgment (Doc. 12) filed by the Plaintiff, Lynne Anne Brunkow, and the Motion for Summary Affirmance (Doc. 16) filed by the Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security. The motions have been fully briefed and are ready for ruling. For the reasons stated below, the decision of the Administrative Law Judge (the "ALJ"), Shreese M. Wilson, is AFFIRMED.

## PROCEDURAL HISTORY

On March 8, 2013, Plaintiff filed for disability insurance benefits ("DIB") claiming that she had been disabled as of March 4, 2013. (R. 162). Her initial claim was denied on May 1, 2013. (R. 94). The claim was again denied upon reconsideration on October 15, 2013. (R. 105). Plaintiff requested a hearing that was held before an ALJ on February 5, 2015. (R. 33-85, 114-15). Plaintiff was represented by counsel, and a Vocational Expert ("VE") testified. (R. 33-85). The ALJ denied Plaintiff's claim

on February 17, 2015. (R. 28). The Appeals Council refused to reconsider Plaintiff's claim on June 23, 2015 (R. 1-4), thereby making the ALJ's decision the final decision of the Commissioner of Social Security. Plaintiff then appealed to this Court pursuant to 42 U.S.C. § 405(g).

## LEGAL STANDARDS

### I. Disability Standard

To be entitled to disability benefits under the Social Security Act, a claimant must prove he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). The Commissioner must make factual determinations in assessing the claimant's ability to engage in substantial gainful activity. *See* 42 U.S.C. § 405(b)(1). The Commissioner applies a five-step sequential analysis to determine whether the claimant is entitled to benefits. 20 C.F.R. § 404.1520; *see also Maggard v. Apfel*, 167 F.3d 376, 378 (7th Cir. 1999). The claimant has the burden to prove disability through step four of the analysis, i.e., he must demonstrate an impairment that is of sufficient severity to preclude him from pursuing his past work. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980).

In the first step, a threshold determination is made as to whether the claimant is presently involved in a substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not under such employment, the Commissioner of Social Security proceeds to the next step. *Id.* At the second step, the Commissioner evaluates the severity and duration of the impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the

2

claimant has an impairment that significantly limits his physical or mental ability to do basic work activities, the Commissioner will proceed to the next step. 20 C.F.R. § 404.1520(c). If the claimant's impairments, considered in combination, are not severe, he is not disabled and the inquiry ends. *Id.* At the third step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work; if the elements of one of the Listings are met or equaled, the claimant is eligible for benefits. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Part 404, Subpart P, Appendix 1.

If the claimant does not qualify under one of the listed impairments, the Commissioner proceeds to the fourth and fifth steps, after making a finding as to the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). At the fourth step, the claimant's RFC is evaluated to determine whether he can pursue his past work. 20 C.F.R. § 404.1520(a)(4)(iv). If he cannot, then, at step five, the Commissioner evaluates the claimant's ability to perform other work available in the economy, again using his RFC. 20 C.F.R. § 404.1520(a)(4)(v).

## II. Standard of Review

When a claimant seeks judicial review of an ALJ's decision to deny benefits, the Court must "determine whether it was supported by substantial evidence or is the result of an error of law." *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The Court's review is governed by 42 U.S.C. § 405(g), which provides, in relevant part: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Substantial evidence is "'such evidence as

3

a reasonable mind might accept as adequate to support a conclusion.'" *Maggard*, 167 F.3d at 379 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

In a substantial evidence determination, the Court will review the entire administrative record, but it will "not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In particular, credibility determinations by the ALJ are not upset "so long as they find some support in the record and are not patently wrong." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). The Court must ensure that the ALJ "build[s] an accurate and logical bridge from the evidence to his conclusion," but he need not address every piece of evidence. *Clifford*, 227 F.3d at 872. Where the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

## FACTUAL BACKGROUND

Plaintiff was fifty-three years old at the time of the onset of her alleged disability. She was a surgical technician who herself required surgery to remove a cyst from her brain. (R. at 38, 49). After the surgery, Plaintiff began experiencing problems with her short-term memory. (R. at 38, 50-51, 74-75). Additionally, since the surgery, she has experienced daily headaches. (R. at 49). The claimant is also a former smoker who has been prescribed an inhaler for her breathing issues. (R. at 41, 61). The claimant has also been prescribed medication for depression. (R. at 58).

Plaintiff has a high school diploma (R. 39, 42) and completed two years of college. (R. 195). After her surgery, the claimant returned to work at Methodist Medical Center, where she was employed as a surgical technician for nearly twenty years. (R. 47-48). She was later fired from her job after receiving "three strikes." (R. 48).

According to the ALJ, the Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 21). She explained, that "[t]he severity of the claimant's mental impairments, considered singly and in combination, [did] not meet or medically equal the criteria of listings 12.02, 12.04 or 12.06." (R. 21). The ALJ further explained, "[i]n activities of daily living, the claimant has mild restriction. The claimant alleges no difficulty dressing, bathing, grooming, shaving, eating, or using the toilet." (R. 21). She further commented, that in "social functioning, the claimant has mild difficulties."  (R. 21). Additionally, the ALJ remarked, "[w]ith regard to concentration, persistence or pace, the claimant has moderate difficulties." (R. 21).

Because the claimant was not considered "disabled" at the third step, the analysis continued to the fourth step. "The fourth step assesses an applicant's residual functional capacity ('RFC') and ability to engage in past relevant work." *Craft*, 539 F.3d at 674.  In the instant case, the ALJ found that the Plaintiff could not continue her past work because of her impairments. (R. 79). Therefore, the analysis continued to the fifth step.

5

The ALJ found that the claimant is not disabled according to the fifth step because the VE, Mary Andrews, testified that the claimant can still perform various jobs available in the national economy despite her impairments; kitchen helper, ticket seller, grocery bagger, and laundry worker. (R. 28).

## DISCUSSION

Plaintiff contends the ALJ committed a number of errors that require a reversal and remand. First, she argues the ALJ should be reversed for failing to apply proper weight and consideration to the testimony of co-workers and family members. (Doc. 13 at 7-10). She also argues that a remand is necessary because "[t]he ALJ erred in making and relying on misstatements of the record and significant omissions of evidence." (Doc. 13 at 11). Moreover, Plaintiff argues that the ALJ's assessment of her RFC was not supported by substantial evidence. (Doc. 13 at 12). Additionally, she argues that the ALJ committed reversible error when she failed to adequately consider the combined effects of the Plaintiff's obesity, together with her memory problems, depression, headaches, and breathing impairment. (Doc. 13 at 15). Finally, Plaintiff contends the ALJ made an improper credibility determination. (Doc. 13 at 17).

**I.   The ALJ's Consideration Of Plaintiff's "Other Source" Evidence Was Sufficient.**

   **A.   Co-worker Letters**

The ALJ described the letters from Plaintiff's co-workers as opinion evidence, but that was an incomplete description. (R. 25-26). While the majority of the letters did contain opinions as to whether Plaintiff could perform her past work and other

work, each of the several letters also contained some factual observations that the ALJ should have taken into account in her RFC determination. (R. 244-51, 270). Plaintiff believes the ALJ's error is of consequence, but the Court finds that it is not.

First, an ALJ is "not required to mention every piece of evidence" in his decision. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Second, the co-worker letters overwhelmingly detail how and why the Plaintiff could not perform her past work. The ALJ found that Plaintiff could not perform her past work. (R. 26-7). Thus, no harm inured to the Plaintiff from the ALJ's apparent failure to consider the letters for their factual assertions. Third, the letters' factual details concerned Plaintiff's lack of focus, memory difficulties and emotional state. The ALJ found that the Plaintiff's impairments could reasonably be expected to cause these symptoms. (R. 25). So again, Plaintiff suffered no harm from the ALJ's apparent failure to consider the letters for their factual substance.

As to the opinion portions of the co-workers' letters that Plaintiff could not do any future work, the ALJ properly recognized such opinions were of little utility. The ALJ explained that she afforded these opinions little weight because their authors "did not have a treatment relationship with the claimant" and "did not base their opinions on a function-by-function analysis." (R. 25-26). To be clear, there is no dispute that the issue of whether or not one can perform any work is an issue reserved for the Commissioner to make. *See, e.g.*, 20 C.F.R. §§ 404.1527, 416.927. Plaintiff's co-workers only observed her in a single work setting and noted how her ability to perform her specific job in that setting fell off dramatically. There are hundreds of

work settings and hundreds of jobs that require different skills and functionality. It is the ALJ who reviews all of the evidence and the record to determine what the claimant can do in a variety of work settings, not coworkers who may be implicitly biased in their perceptions because of the limited nature of their interaction with the claimant. The letter writers offered little factual substance in their letters of how their observations translated across all types of work and various skill levels and functionality necessary to complete such work, which is why the ALJ was not wrong to note the lack of a function-by-function analysis.

More importantly, none of these coworker's—including Dr. Boyd—were in a treating relationship with Plaintiff and thus they lacked a treater's unique perspective of the Plaintiff's impairments. According to the Social Security Administration, "For opinions from [non-medical sources], it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, [. . .] the source's area of specialty or expertise, [. . .] whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p, 2006 SSR LEXIS 5, *14. Therefore, the ALJ's decision to give the opinions of the claimant's co-workers little weight due to the fact that they 1) did not have a treatment relationship with the claimant and 2) demonstrated no knowledge and understanding of all types of work and the various skill levels and functionality to perform such work is acceptable according to the Social Security Administration regulations.

8

### B.      Plaintiff's Brother's Testimony and Her Daughter's Statement

The ALJ also mentioned that she "considered the statements of the claimant's brother to medical providers" and "affords these statements little weight, as the claimant's brother has indicated that he does not see her often and is not familiar with her activities of daily living or the severity of her condition." (R. 26). The brother, according to the record, stated, "I don't see [the claimant] too often.  I take her to appointments." (R. 450). That was in 2014. However, in the hearing in 2015, the brother testified that he was seeing the Plaintiff between four and six times a week, "transporting her to appointments and… stuff" and maintaining frequent contact over the phone where she repeatedly demonstrated her lack of memory. (R. 74). He described how the Plaintiff could not retain information in her short term memory. (R. 75). He admitted that he had no basis to answer whether the Plaintiff retained any hobbies she used to do before her brain surgery. He also explained that he did not help her remember to take her medication.

The ALJ's decision to give the brother's statements "little" weight does not warrant a reversal. The ALJ was not unreasonable to conclude that the brother did not see Plaintiff often enough to provide weighty evidence of total disability given he admitted he had no idea whether the Plaintiff still maintained her pre-surgery hobbies. Since the brother was so unfamiliar with his sister such that he had no basis to comment on her hobbies, the ALJ could fairly draw the conclusion that he was not in a position to speak about her longitudinal condition.

Plaintiff's daughter provided a third-party function report in which she reported Plaintiff's short term memory was impaired following the surgery, that she needed reminders for doctor appointments and to take medication when she has a new prescription, that she had forgotten to pay bills more often since the surgery, and that stress increased her forgetfulness. (R. 202-8). The ALJ failed to mention the report or the daughter's statements in her decision. Plaintiff argues that the ALJ's omission calls into question whether she considered these statements at all, and if she did, what weight she assigned them.

According to the case law, the ALJ is "not required to mention every piece of evidence." *Craft*, 539 F.3d at 673. Furthermore, at this stage of the litigation, the Court does not reweigh evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). At this stage, the Court is to determine if substantial evidence in the record supports the ALJ's decision. *Maggard*, 167 F.3d at 379. If substantial evidence exists in the record to support the ALJ's decision and the ALJ did not apply an "erroneous legal standard," this Court must affirm the ALJ's decision. *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996).

The Court does not understand how the information Plaintiff's brother or daughter provided contradicts the ALJ's decision that Plaintiff could not perform her past work but could still perform three occupations, all of which were unskilled and would seem to not require much memory or focus: kitchen helper, laundry worker, and grocery bagger. The Court cannot conclude that the ALJ's consideration of the "other source" evidence presented by Plaintiff requires a remand.

II. **The ALJ's Purported Errors In Making And Relying On Misstatements Of The Record And Significant Omissions Of Evidence Do Not Warrant A Remand.**

Plaintiff argues that the ALJ misstated findings made by Dr. Regan in her report. (Doc. 13 at 11-12). However, this Court does not find that the ALJ misstated the record. Plaintiff writes:

> The ALJ seems to find that Dr. Regan did not believe Ms. Brunkow was as impaired as the testing showed, stating: "Dr. Regan did not believe that [Ms. Brunkow] could function independently at home with the level of memory impairment she demonstrated on formal tasks." (AR 25) The ALJ referred generally to Exhibit 5F—which is ninety-two pages long—to support this statement, however there is no statement in Dr. Regan's assessment matches that made by the ALJ.

(Doc. 13 at 11). The Court was equally perturbed that the ALJ did not pin cite the page(s) at issue in Exhibit 5F, which was indeed ninety-two pages, but on page seventy-two (72) of Exhibit 5F, 454 of the record, the Court found Dr. Regan's exact statement that the ALJ noted. It reads: "I do not believe, however, that she could be functioning independently at home with the level of memory impairment she demonstrates on formal tasks." (R. 454). Thus, Plaintiff's accusation that this statement by Dr. Regan does not exist (Doc. 18 at 7) and that the ALJ put words in Dr. Regan's mouth and effectively gave an impermissible lay opinion (Doc. 13 at 13) is totally unfounded. The statement also gives support to the ALJ's finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 25).

Dr. Regan went on to note that there was "no clear evidence of statistical decline over the last 2.5 years when comparing neuropsych exam results." This

11

statement supports the ALJ's finding that the longitudinal evidence did not support a finding of full disability.

### III. The ALJ's RFC Assessment Was Supported By Substantial Evidence.

Courts "deferentially review the ALJ's factual determinations and affirm the ALJ if the decision is supported by substantial evidence in the record." *Craft*, 539 F.3d at 673. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "The ALJ is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled." *Id.* "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) [. . .] may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." SSR 96-8p, 1996 SSR LEXIS 5, *5. "RFC represents the most that an individual can do despite his or her limitations or restrictions." *Id.* at *12.

The ALJ found that the Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the limitations that 1) she should avoid concentrated exposure to irritants such as fumes, dust, odors and gases, as well as poor ventilation and 2) her work environment should be low stress with no more than occasional decision-making or changes in the work setting. (R. 23).

In making that finding, the ALJ relied on the following substantial evidence from the record supporting her RFC assessment. Plaintiff clearly suffers from a poor memory, and concomitant lack of self-esteem due to not functioning as well as she did

before her surgery. Plaintiff is able to drive on her own, although she avoids driving to unfamiliar areas. (R. 40-42, 63). She reads and writes. (R. 42, 67). She counts money and makes change. (R. 42). She lives and functions alone, despite that her daughter and brother visit and help her remember some things and travel to unfamiliar places. (R. 44). She cares for her dog. (R. 44, 70). She admitted that she could not think of anything she could not do at home without the help of another person. (R. 68). Plaintiff also opined herself that she is capable of working at places such as Menards, the Dollar Store, and gas stations. (R. 45-47).

### A.     Headaches and Other Various Afflictions

Plaintiff argues that the ALJ ignored her headaches. The record demonstrates that Plaintiff complained of suffering from headaches on a daily basis (R. 49, 98) but that the headaches are alleviated with over-the-counter medication. (R. 50). The ALJ found that the headaches would not cause "more than a minimal limitation in the [Plaintiff's] ability to perform work-related activities." (R. 20-21). And while she expressed difficulty sleeping due to the headaches in 2013 (R. 98), she informed the ALJ she was getting five to six hours of sleep a night and periodically napping during the day. (R. 69). She also has high blood pressure but it is being maintained with medication. (R. 54). Plaintiff is obese but she is capable of physical exertion. (R. 54-55). Weather-permitting, she would exercise with a friend by fast walking. (R. 54-55). This fast walking is the only thing that causes her to need to use her rescue inhaler. (R. 56). Plaintiff also actively helped her mother before she passed away and would help clean her mother's house. (R. 63-64). Plaintiff also liked to sew and is capable of

13

sewing blue jean quilts, although she has lost interest in that recently probably due to depression. (R. 66). She retains the social skills to "get along with [her] neighbors." (R. 68).

### B. Obesity

According to the Social Security Administration, "[O]besity is a 'severe' impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-01p, 2006 SSR LEXIS 1, *11. Additionally, the Social Security Agency says that "[t]here is no specific level of weight or BMI that equates with a 'severe' or a 'not severe' impairment" and "an individualized assessment of the impact of obesity on an individual's functioning" determines if the obesity should be considered a severe impairment. *Id.* at *12. Moreover, the Social Security Administration states the following: "[W]e will not make assumptions about the severity or functional effects of obesity combined with other impairments. We will evaluate each case based upon the information in the case record." *Id.* at *15.

The doctors whom the ALJ consulted did not consider the Plaintiff's obesity in their evaluations. Additionally, according to the record, "there is no physical restriction based upon the seven strength factors of the physical RFC (lifting, carrying, standing, walking, sitting, pushing, and pulling)." (R. 94). The Plaintiff did not indicate that her impairments affected the following physical activities: lifting,

squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, or using hands. (R. 231).

It is true that the ALJ failed to articulate the impact of Plaintiff's obesity on her RFC but the Court does not find such failure to be of consequence. First, neither Plaintiff, her brother nor her daughter, ever asserted that her obesity limited her ability to work or otherwise function on a daily basis in any fashion. In *Clifford v. Apfel*, the Seventh Circuit held that it was reversible error for an ALJ to have failed to consider obesity in the RFC assessment when the claimant failed to claim it as an impairment because the evidence was of the sort that should have alerted the ALJ that the claimant had another relevant impairment that could contribute to the cumulative effect of her other impairments. 227 F.3d 863, 873 (7th Cir. 2000). Importantly, unlike in *Clifford*, there does not appear in this record to be any indication that any medical sources viewed Plaintiff's obesity as a limitation.

Moreover, subsequent cases from the Seventh Circuit counsel that an ALJ's failure to mention a claimant's obesity may be considered a "harmless error" in certain situations. For example, in *Prochaska v. Barnhart*, the Seventh Circuit noted that the claimant did not "specify how [her] obesity further impaired [her] ability to work" and that the ALJ's decision was based upon the evaluations of doctors whose analyses already factored in the claimant's obesity, before it concluded that the ALJ's non-discussion of the claimant's obesity within his own analysis was a "harmless error." 454 F.3d 731, 737 (7th Cir. 2006). Additionally, in *Skarbek v. Barnhart*, the Seventh Circuit ruled that the ALJ committed a "harmless error" when he failed to

15

mention the claimant's obesity within his analysis because "[the claimant] does not specify how his obesity further impaired his ability to work" and "the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [the claimant's] obesity." 390 F.3d 500, 504 (7th Cir. 2004).

Here, not only has Plaintiff never asserted that her obesity limited her ability to work in any fashion, there is evidence in the record that she is not so impaired. Plaintiff discussed how she would fast walk two miles as exercise and the only reason she stopped was the weather and being afraid to go by herself because of the dark. (R. 54-55). Strangely, Plaintiff later changed her story and said she had not been walking because of shortness of breath, which one could reasonably attribute to obesity even though this Court was not able to find in the record an indication that Plaintiff's asthma was caused or exacerbated by Plaintiff's obesity. In any event, her use of a Symbicort inhaler seems to alleviate asthma symptoms and she retains a rescue inhaler that she only needs when she exercises vigorously, that is when she fast walks. (R. 56). Given all this information, the ALJ did not err in failing to account for Plaintiff's obesity in the RFC assessment.

    **C.    Limitations Not Presented to the VE.**

Next, Plaintiff complains that the ALJ ignored that Plaintiff was diagnosed to be moderately limited in her ability to carry out detailed instructions, maintain attention and concentration for extended periods, and work in coordination with or in proximity to others without being distracted by them and moderately limited in her ability to interact appropriately with the general public due to lowered social

tolerance caused by her depression. In her view, the ALJ's presentation to the VE did not account for these limitations.

In determining whether jobs existed in the national economy which the Plaintiff could perform, the ALJ asked the VE:

> This individual would need to be in an environment, though, where they can avoid concentrated exposure to irritants such as dust, fumes, odors, gases and poor ventilation. This individual would have **moderate limitations with concentration, persistence or pace when attempting complex tasks, so the individual would be able to perform detailed or simple tasks, but they would have moderate limitations with concentration, persistence or pace when attempting complex tasks**….
>
> If I change the hypothetical and I add to it that the individual to help alleviate anxiety about the job or some anxiety, **the individual needs to be in an environment that is low stress in nature. I'm going to define low stress as no more than occasional decision-making or changes in the work setting, so every day when the individual goes to work they know what their work tasks are and they're basically unchanging**, how would that affect the individual's ability to perform either the phlebotomist job or the light or the medium jobs that you identified?

(R. 80-81). In response to that, the VE identified a few medium jobs and one light job that Plaintiff would still be able to perform. Plaintiff's counsel added a further condition:

> If I were to vary one of the hypotheticals by adding that the person would have **no more than occasional contact with the public and co-workers and supervisors** for anxiety reasons or whatever reasons, would that have any impact upon your answers with regard to those positions?

(R. 83). The VE responded that only one light job and one medium job existing in the national economy would remain viable. There is nothing supporting this limitation in the record though.

The above quoted text reveals that the ALJ did not take into account Plaintiff's moderate limitation in dealing with the general public. But this error is harmless. No consulting physician found that Plaintiff could not perform any work that involved dealing with the public. It was noted that Plaintiff's ability to work in coordination with or in proximity to others without being distracted by them was moderately limited; her ability to interact with the general public was moderately limited; yet her ability to ask simple questions, request assistance, to accept instructions and criticism from supervisors, and to get along with coworkers were all not significantly limited. (R. 103). The MRFC narrative explanation contained the following observation: "[Plaintiff] can relate appropriately to customers, coworkers, and supervisors, but <u>would work best in a lowered stress environment, away from the general public</u>." (R. 104). That language describes the optimal work setting for Plaintiff, but it does not rule out work settings in which the Plaintiff would have some interaction with the public or a work setting with more than occasional contact with the public and co-workers and supervisors, which is what Plaintiff's counsel asked the VE.

## IV.   Credibility

Lastly, Plaintiff takes issue with the ALJ's credibility determination. In the portion of her opinion describing how she arrived at an RFC for Plaintiff, the ALJ concluded that her medically determinable impairments could reasonable be expected to cause her alleged symptoms but her "statements concerning the intensity,

persistence and limiting effects of these symptoms [were] not entirely credible." (R. 25). Towards the end of her discussion of RFC the ALJ wrote:

> In sum, the above residual functional capacity assessment is supported by the record as a whole. In arriving at this decision, the undersigned has considered the claimant's credibility, pursuant to SSR 96-7p. The claimant testified credibly, and the record shows she does have some memory and concentration limitations. Therefore, the residual functional capacity limits her to working in a low stress environment requiring no more than occasional decision-making, with no more than occasional changes in the work setting.

(R. 26). Plaintiff contends the ALJ failed to identify any of the alleged limitations that she found not entirely credible or to explain how she could be both credible in her testimony regarding her impaired memory, but not entirely credible in other areas in a way that would call into question the severity of her impairments. She contends this unexplained inconsistency is grounds for remand.

The ALJ was not the only party to find the Plaintiff's statements regarding the intensity of her symptoms not fully credible. Drs. Phyliss Brister and Linda Lanier, state agency psychologists, both noted that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence alone and that they viewed such statements as only partially credible. (R. 91-2, 101-102). Dr. Regan opined "I do not believe, however, that she could be functioning independently at home with the level of memory impairment she demonstrates on formal tasks." (R. 454). Thus, the ALJ did not make an unsubstantiated credibility determination and the opinions of Brister, Lanier and Regan provide a clear basis for the ALJ's credibility determination.

## CONCLUSION

For the reasons stated above, the Court does not find that the ALJ committed reversible error in deciding Plaintiff's claim for disability benefits. Her decision is therefore AFFIRMED. The Motion for Summary Judgment (Doc. 12) filed by the Plaintiff, Lynne Anne Brunkow, is DENIED and the Motion for Summary Affirmance (Doc. 16) filed by the Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security is GRANTED. SO ORDERED.

CASE TERMINATED.

Entered this 30th day of January, 2017.

                                                s/ Joe B. McDade
                                                JOE BILLY McDADE
                                    United States Senior District Judge